1

2

3

4

5

6

7

8                      UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   CHRISTINA HOLMES,                         No. 2:16-cv-00092-TLN-KJN PS

12                 Plaintiff,

13        v.                                   FINDINGS AND RECOMMENDATIONS

14   THUNDER VALLEY CASINO RESORT,
     et al.,
15
                  Defendants.
16

17

18        Plaintiff Christina Holmes, who is proceeding without counsel, filed her original

19   complaint and an application to proceed *in forma pauperis* on January 15, 2016.[1]  (ECF Nos. 1-

20   2.)  On April 22, 2016, the court granted plaintiff's application to proceed *in forma pauperis*, but

21   also dismissed her complaint with leave to amend.  (ECF No. 3.)  Plaintiff subsequently filed a

22   first amended complaint in response to the court's order.  (ECF No. 4.)

23        As explained in the court's prior order, the determination that plaintiff may proceed *in*

24   *forma pauperis* does not complete the required inquiry.  Pursuant to 28 U.S.C. § 1915(e)(2), the

25   court is directed to dismiss the case at any time if it determines that the allegation of poverty is

26   untrue, or if the action is frivolous or malicious, fails to state a claim on which relief may be

27
     ───────────────
28   [1]  This case proceeds before the undersigned pursuant to Eastern District of California Local Rule
     302(c)(21) and 28 U.S.C. § 636(b)(1).

                                                1

1  granted, or seeks monetary relief against an immune defendant.

2      A claim is legally frivolous when it lacks an arguable basis either in law or in fact.

3  Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th

4  Cir. 1984).  The court may, therefore, dismiss a claim as frivolous where it is based on an

5  indisputably meritless legal theory or where the factual contentions are clearly baseless.  Neitzke,

6  490 U.S. at 327.  The critical inquiry is whether a claim, however inartfully pleaded, has an

7  arguable legal and factual basis.  See Jackson v. Arizona, 885 F.2d 639, 640 (9th Cir. 1989);

8  Franklin, 745 F.2d at 1227.

9      To avoid dismissal for failure to state a claim, a complaint must contain more than "naked

10  assertions," "labels and conclusions," or "a formulaic recitation of the elements of a cause of

11  action."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-57 (2007).  In other words,

12  "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

13  statements do not suffice."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).  Furthermore, a claim

14  upon which the court can grant relief must have facial plausibility.  Twombly, 550 U.S. at 570.

15  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to

16  draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 129

17  S. Ct. at 1949.  When considering whether a complaint states a claim upon which relief can be

18  granted, the court must accept the allegations as true, Erickson v. Pardus, 127 S. Ct. 2197, 2200

19  (2007), and construe the complaint in the light most favorable to the plaintiff, see Scheuer v.

20  Rhodes, 416 U.S. 232, 236 (1974).

21      Pro se pleadings are liberally construed.  See Haines v. Kerner, 404 U.S. 519, 520-21

22  (1972); Balistreri v. Pacifica Police Dep't., 901 F.2d 696, 699 (9th Cir. 1988).  Unless it is clear

23  that no amendment can cure the defects of a complaint, a pro se plaintiff proceeding in forma

24  pauperis is entitled to notice and an opportunity to amend before dismissal.  See Noll v. Carlson,

25  809 F.2d 1446, 1448 (9th Cir. 1987); Franklin, 745 F.2d at 1230.

26      In her first amended complaint, plaintiff alleges that she is a part-time employee of

27  defendant Thunder Valley Casino Resort ("Thunder Valley") working as a card dealer in its table

28  games department.  (ECF No. 4 at 1.)  She alleges further that defendants Al Marrandino and

2

1   Amy Kieng are employed by Thunder Valley; Marrandino acting as the director of the table
2   games department, and Kieng as a floor supervisor in that department.  (Id. at 1-2.)  Plaintiff
3   alleges that Thunder Valley has a non-discrimination policy contained within its "Thunder Valley
4   Team Member Handbook" ("Thunder Valley Handbook"), "which outlines all policies of
5   employment" and is signed by all employees, that prohibits discrimination and harassment against
6   employees based on age, gender, and race, among other specified classes.  (Id. at 2-3.)  That
7   policy also allegedly provides that Thunder Valley personnel will promptly conduct an
8   investigation into written claims of discrimination and harassment and provides a detailed process
9   under which such an investigation is to be carried out.  (Id. at 9-12.)

10          Plaintiff alleges that throughout the course of her five-year period of employment at
11   Thunder Valley, she has experienced "many incidents of implicit discrimination along with
12   hostile behavior."  (Id. at 3.)  In particular, plaintiff alleges that defendant Kieng physically
13   assaulted her in March of 2015.  (Id.)  Plaintiff alleges further that she reported this incident to
14   defendant Marrandino and to personnel in Thunder Valley's labor relations and human resources
15   departments, but they did not verify the surveillance footage of the incident and failed to follow
16   the investigation procedure set forth in the Thunder Valley Handbook.  (Id. at 3-4.)  In her
17   allegations, plaintiff also alludes to several other instances of claimed discrimination and
18   harassment, such as statements made by other, unidentified Thunder Valley employees that
19   plaintiff had "a tail," and comments about her hair and nails that invoked racial stereotypes.  (Id.
20   at 5-6.)  Plaintiff alleges further that she had been detained by a floor supervisor, threatened by a
21   pit manager, and had requested transfer to a different department, but was denied.  (Id. at 6.)

22          Plaintiff alleges that the Thunder Valley Handbook's policy was not followed when she
23   reported the above incidents.  (Id. at 3-6.)  Plaintiff also alleges that the above conduct was
24   carried out by defendants because of plaintiff's "race, color, sex, and age" due to the fact that she
25   is the only African American female over 40 years of age working as a table card dealer at
26   Thunder Valley, and because other similarly situated employees were treated more favorably
27   under similar circumstances.  (Id. at 5-7.)

28   ////

                                                    3

1   Plaintiff alleges further that after bringing the above incidents to defendants' attention but

2   not receiving an adequate response, she filed complaints with the California Department of Fair

3   Employment and Housing ("DFEH") and the U.S. Equal Employment Opportunity Commission

4   ("EEOC") regarding the above incidents.[2]  (Id. at 4.)  Plaintiff alleges that both the DFEH and

5   EEOC provided plaintiff "right to sue" notices with regard to her claims arising out of the alleged

6   incidents detailed above.  (Id. at 5, 18, 25.)

7   Based on the above factual allegations, plaintiff asserts a claim for breach of contract for

8   defendants' alleged failure to follow the procedure set forth in the Thunder Valley Handbook in

9   connection with her reports of the above incidents.  (Id. at 2, 7.)  Furthermore, as discussed in the

10  court's prior order dismissing plaintiff's original complaint with leave to amend (ECF No. 3), it

11  appears that plaintiff also seeks to allege claims for race and gender discrimination under Title

12  VII and for age discrimination under the Age Discrimination in Employment Act ("ADEA").

13  Plaintiff seeks damages in the amount of $150,000 for the alleged breach of the terms of the

14  Thunder Valley Handbook.  (ECF No. 4 at 7.)  While plaintiff's allegations in the first amended

15  complaint shed further light on the alleged facts underlying her claims and address some of the

16  deficiencies outlined in the court's prior order dismissing the original complaint, they also

17  demonstrate that defendants are immune to the claims for monetary damages plaintiff asserts

18  against them for the reasons stated below.

19  As an initial matter, the allegations of the first amended complaint and the documents

20  attached to that pleading show that defendant Thunder Valley is owned and operated by the

21  United Auburn Indian Community.  (ECF No. 4 at 8, 16-18, 20-21 (listing "United Auburn Indian

22  Community d.b.a. Thunder Valley Casino" as the respondent to the employment discrimination

23  claim plaintiff allegedly filed with the DFEH).)  The United Auburn Indian Community is a

24  federally recognized Indian tribe,[3] which "is subject to suit only where Congress has authorized

25  ───────────────
    [2] An alleged copy of plaintiff's complaint filed with the DFEH is attached as an exhibit to the first
26  amended complaint.  (ECF No. 4 at 17, 21-24.)

27  [3] Documents published in the Federal Register and publically available on the United States
    Bureau of Indian Affairs' website show that the United Auburn Indian Community is an Indian
28  tribal entity "recognized and eligible to receive services from the United States Bureau of Indian

1  the suit or the [T]ribe has waived its immunity." Kiowa Tribe of Oklahoma v. Mfg. Techs., Inc.,

2  523 U.S. 751, 760 (1998); see also Three Affiliated Tribes of Fort Berthold Reservation v. Wold

3  Engineering, 476 U.S. 877, 890 (1986); Santa Clara Pueblo v. Martinez, 436 U.S. 49, 58 (1978);

4  United States v. United States Fidelity & Guaranty Co., 309 U.S. 506, 512 (1940).  "This [tribal

5  sovereign] immunity applies to the tribe's commercial as well as governmental activities." Cook

6  v. AVI Casino Enterprises, Inc., 548 F.3d 718, 725 (9th Cir. 2008).  Accordingly, Thunder Valley

7  Casino Resort, a casino allegedly owned and operated by the United Auburn Indian Community,

8  and which "functions as an arm of the Tribe," also "enjoy[s] tribal immunity." Id. at 726 (internal

9  quotation marks omitted); Kiowa Tribe of Oklahoma, 523 U.S. at 1047.  Because of this

10  immunity, and for the reasons discussed below, plaintiff's claims against Thunder Valley are

11  barred.

12       With regard to plaintiff's breach of contract claim, federally recognized Indian tribes

13  "enjoy immunity from suits on contracts, whether those contracts involve governmental or

14  commercial activities and whether they were made on or off a reservation," unless Congress has

15  abrogated such immunity or the Tribe itself has waived it.  Kiowa Tribe of Oklahoma, 523 U.S. at

16  760.  "Congress has not abrogated this immunity" in the context of claims arising out of contracts

17  involving governmental or commercial activities.  Id.  Moreover, the copy of the Thunder Valley

18  Handbook attached to the first amended complaint—which plaintiff alleges provided the terms of

19  the contract that forms the basis for her breach of contract claim—specifically provides the

20  following as part of its employee "acknowledgement":  "I also understand that this Handbook and

21

22  Affairs."  Department of the Interior, Bureau of Indian Affairs, Indian Entities Recognized and
   Eligible to Receive Services from the United States Bureau of Indian Affairs, 18 Fed. Reg. 26826,

23  26830 (Apr. 25, 2016) (also available at
   http://www.bia.gov/WhoWeAre/BIA/OIS/TribalGovernmentServices/TribalDirectory/).

24  Accordingly, the court takes judicial notice sua sponte of the fact that the United Auburn Indian
   Community is a federally recognized Indian tribe as it is "a fact that is not subject to reasonable

25  dispute because it . . . can be accurately and readily determined from sources whose accuracy
   cannot reasonably be questioned."  Fed. R. Evid. 201(b)(2), (c)(1);  44 U.S.C. § 1507 ("The

26  contents of the Federal Register shall be judicially noticed . . . ."); see also Cent. Delta Water

27  Agency v. U.S. Fish & Wildlife Serv., 653 F. Supp. 2d 1066, 1079 (E.D. Cal. 2009) (taking
   judicial notice of documents either published in the Federal Register or publically available on a

28  government website).

1    any statements of policy and procedure contained in this Handbook do not constitute a waiver of

2    The United Auburn Indian Community or Thunder Valley Casino's sovereign immunity."  (ECF

3    No. 4 at 16 ("Exhibit D")).  This allegation clearly shows that defendant Thunder Valley has not

4    waived its immunity from suit with regard to plaintiff's contract claim stemming from the

5    provisions of the Thunder Valley Handbook.  Accordingly, Thunder Valley Casino is immune to

6    plaintiff's breach of contract claim, therefore necessitating dismissal of that claim with prejudice.

7          Furthermore, with regard to plaintiff's apparent claims under Title VII and the ADEA,

8    federally recognized Indian tribes such as the United Auburn Indian Community, which allegedly

9    owns and operates defendant Thunder Valley, cannot be held liable for employment

10   discrimination claims under those Acts' provisions.  42 U.S.C. § 2000e(b) (expressly providing

11   that Indian tribes are not "employers" for purposes of employment discrimination claims brought

12   under Title VII); E.E.O.C. v. Karuk Tribe Hous. Auth., 260 F.3d 1071, 1082 (9th Cir. 2001)

13   (citing Donovan v. Coeur d'Alene Tribal Farm, 751 F.2d 1113, 1115 (9th Cir. 1985)) (holding

14   that age discrimination claims cannot be brought under the ADEA against an entity operated by

15   an Indian tribe when they arise out of an employment relationship between that entity and a tribal

16   employee).  Therefore, to the extent plaintiff attempts to allege discrimination claims against

17   Thunder Valley under Title VII and/or the ADEA, such claims are meritless and must be

18   dismissed with prejudice.

19         In addition, plaintiff's claims against defendants Al Marrandino and Amy Kieng must also

20   be dismissed because the factual allegations of the first amended complaint show that the tribal

21   sovereign immunity enjoyed by Thunder Valley also extends to those defendants under the

22   circumstances alleged in the first amended complaint.  "Tribal sovereign immunity 'extends to

23   tribal officials when acting in their official capacity and within the scope of their authority.'"

24   Cook, 548 F.3d at 727 (quoting Linneen v. Gila River Indian Community, 276 F.3d 489, 492 (9th

25   Cir. 2002)).  "[A] plaintiff cannot circumvent tribal immunity 'by the simple expedient of naming

26   an officer of the Tribe as a defendant, rather than the sovereign entity.'"  Cook , 548 F.3d at 727

27   (quoting Snow v. Quinault Indian Nation, 709 F.2d 1319, 1322 (9th Cir.1983)).  Here, plaintiff

28   alleges that both Marrandino and Kieng were employees of Thunder Valley and that both acted in

their respective roles as employees when carrying out the conduct alleged against them without deviating from the scope of their respective authorities.  (See generally, ECF No. 4 at 1-8.) Furthermore, plaintiff sues Marrandino and Kieng in name but seeks recovery from Thunder Valley with respect to their alleged actions, and apparently seeks damages based only on the alleged breach of the contract between her and Thunder Valley.  (Id. at 7-8.)  Because the allegations of the first amended complaint attempt to hold defendants Marrandino and Kieng liable for actions taken in their official capacity only, as tribal employees of Thunder Valley, tribal immunity bars plaintiff's claims against them.

In sum, the defendants named in the first amended complaint are entitled to tribal sovereign immunity with regard to plaintiff's breach of contract claim and do not fall within the categories of those who may be held liable for claims of discrimination under Title VII and the ADEA.  Although the court would ordinarily grant a pro se plaintiff further leave to amend, the bar of sovereign immunity cannot be overcome by further revision of plaintiff's allegations.  As such, granting leave to amend would be futile.  See Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 339 (9th Cir. 1996).

Accordingly, IT IS HEREBY RECOMMENDED that:

1.  This action be dismissed with prejudice.

2.  The Clerk of Court be directed to close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen (14) days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served on all parties and filed with the court within fourteen (14) days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

////

IT IS SO RECOMMENDED.

Dated:  June 7, 2016

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE